UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELVIN SUTTON, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 3:CV-10-1899 |
| | : |
| MARVA CERULLO, et al., | : (Judge Kosik) |
| | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff, Kelvin Sutton, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging claims of the denial of adequate medical care for a foot condition called "plantar fasciitis" while he was confined at the State Correctional Institution at Mahanoy (SCI-Mahanoy), Pennsylvania.[1] The only remaining Defendant is Nelson Iannuzzi, CRNP, at the time an employee of Prison Health Services, Inc.[2] Pending before the court are Plaintiff's motion to compel discovery (Doc. 99) and motion for leave to continue discovery (Doc. 112).

---

[1] Plaintiff has since been transferred to the State Correctional Institution at Frackville, Pennsylvania.

[2] At the relevant time, Iannuzzi was employed by Prison Health Services, Inc. (later known as Corizon Health, Inc.), a contract provider of correctional healthcare at prisons across the country, including the Pennsylvania Department of Corrections. Thereafter, Wexford Health, Inc. became the contract provider of correctional healthcare within the DOC, and Iannuzzi continued his employment with Wexford.

## I. Background[3]

In his complaint, Plaintiff alleges that Defendant was deliberately indifferent to his plantar fasciitis condition in August of 2009. Specifically, he claims that on August 12, 2009, he was examined by Dr. G. Gustitus. Gustitus ordered (1) a consult with orthotics for custom F.O.S. to accommodate the deformity of Plaintiff's feet and to reduce shock, and (2) a renewal of arch support insoles for six (6) months, noting that a deformity was present in Plaintiff's foot. On August 26, 2009, Plaintiff went to a medical appointment at SCI-Mahanoy to exchange and receive new arch support insoles from Ms. Albertson, a Prison Health Services employee. Defendant Iannuzzi entered the room and asked to see Plaintiff's old pair of insoles, which Plaintiff claims were visibly worn out. Iannuzzi questioned the authorization for such treatment, and did not agree that Plaintiff's current insoles looked worn out. He informed Plaintiff that he would be required to wear the old insoles until Iannuzzi authorized new ones.

---

[3] Only the claims remaining in the complaint against Defendant Iannuzzi will be set forth. All other defendants have been dismissed from this action. On August 30, 2011, a motion to dismiss filed by Defendants Cerullo and Chipriano was granted and they were dismissed from this action on the basis of respondeat superior and the lack of personal involvement. (Doc. 54.) On March 12, 2012, a motion to dismiss filed by Defendants Modery and Neill was granted on the basis of Plaintiff's failure to exhaust his available administrative remedies pursuant to 42 U.S.C. § 1997e(a). (Doc. 59.) On September 24, 2013, a motion to dismiss filed by Defendant Lisiak was granted on the basis of failure to exhaust, and in the alternative, the lack of personal involvement in Plaintiff's medical care. (Doc. 63.)

On August 28, 2009, a prison nurse informed Plaintiff that Iannuzzi had ordered her to seize and destroy Plaintiff's prescribed arch support insoles. He was further told that Iannuzzi had discontinued the use of insoles.

On January 22, 2010, Plaintiff states he received orthotics and boots for his plantar fasciitis condition. On March 1, 2010, he received Moldable Arch Support Gel insoles from the prison medical department.

A motion to dismiss filed on behalf of Iannuzzi was granted in part and denied in part on September 24, 2013. The court found that any claims set forth against Iannuzzi with respect to incidents occurring prior to September of 2008 were barred by the statute of limitations. However, the claims raised against Iannuzzi regarding the incidents occurring on August 26, 2009 and August 28, 2009 were found to be timely and would proceed. At that point, the court was not willing to find that Plaintiff's medical condition was not sufficiently serious for purposes of an Eighth Amendment claim, or that Plaintiff alleged mere disagreement with the treatment he was receiving, or negligence on the part of Iannuzzi.

Iannuzzi filed his answer to the remaining claims against him on November 13, 2013. (Doc. 73.) Although a case management order was not issued, the parties began to engage in discovery.[4] Plaintiff has served Requests for Admissions and for

---

[4] Middle District of Pennsylvania Local Rule 26.4 provides that in the absence of a discovery deadline, each party to a civil action shall complete all discovery proceedings within six (6) months of the date of the last pleading filed by that party.

the Production of Documents on Defendant.  Defendant responded and/or objected thereto.  Defendant also conducted the deposition of Plaintiff.

Ripe for consideration is Plaintiff's motion to compel discovery filed on July 29, 2014.  Plaintiff seeks to compel the production of documents, which he requested in his First Request for the Production of Documents served on or about February 6, 2014.

**II.   Standard of Review**

It is well settled that Fed. R. Civ. P. 26 establishes a fairly liberal discovery policy.  The Federal Rules of Civil Procedure allow discovery on any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence.  See Fed. R. Civ. P. 26(b)(1).  Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978).  However, "discovery, like all matters of procedure, has ultimate and necessary boundaries."  Id.  Discovery may be properly limited where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had

---

See M.D. Pa. L.R. 26.4.  While the time period for conducting discovery has long expired, the court permitted discovery to remain open for the sole purpose of addressing Plaintiff's motion to compel once it became ripe.  (See Doc. 105 at 12-13.)

4

ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

See Fed. R. Civ. P. 26(b)(2)(C).

### III.   Discussion

####   A.   Motion to compel

The Request for Production of Documents at issue consists of ten (10) separate requests. (Doc. 86.) On March 6, 2014, counsel for Defendant objected to each of the requests on the basis that they were unreasonable vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, protected by the attorney-client privilege and/or the attorney-work product doctrine, and/or that Defendant has never been employed by the Pennsylvania Department of Corrections. (Doc. 102.) In some instances, Defendant did provide a further response, without waiving his objection, in that (1) he does not maintain custody or control over the information requested and/or (2) Plaintiff was referred to his medical records, over which Defendant does not maintain custody or control. (Id.) In his motion to compel, Plaintiff challenges each of Defendant's objections.

In his First Request for Production of Documents, Plaintiff seeks the following:

1. Any and all grievances, complaints, or other documents concerning mistreatment by the Defendant, any memoranda, investigative files and other documents created in response to such documents, since employed by the Pennsylvania Department of Corrections.

5

> 8. Any logs, list, or other documentation reflecting complaints filed against the Defendant by other Staff Members since employed to the date of your response.
>
> 9. Any and all documents created by Staff Members in response to complaints filed either by Staff members or Plaintiff since employed to date of response.

Defendant objects to all three of these requests as "unreasonably vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in this matter." (Doc. 104, Ex. B.) A further objection is raised on the basis that Plaintiff's foundation for the questions, that Defendant is an employee of the DOC, is incorrect.

The court agrees with Defendant's objections and the motion to compel will be denied with respect to said requests. Without question, the requests are completely overbroad. They are not related in time or subject matter to the incidents in question. Moreover, some of the information Plaintiff seeks is totally irrelevant to the remaining claims in this action. For instance, any documentation reflecting complaints filed by Staff members at SCI-Mahanoy against Defendant has no relevance to Plaintiff's medical deliberate indifference claim against Defendant. In addition, even if grievances or complaints of mistreatment have ever been filed by other inmates against Defendant, this does not establish that Defendant ever engaged in any such conduct. Inmates file numerous grievances against the professionals they come in contact with in the prison on a daily basis, but this does not establish that any of the grievances or complaints had merit. Further, Defendant is not and has never

6

been an employee of the Department of Corrections.  Rather, he is an employee of a contract provider of correctional healthcare services to the prison, and not a DOC staff member.

     Next, Plaintiff requests the production of the following documents:

2. Any and all policies, directives, or instructions to the Defendant concerning the procedure for Nurse Practitioners, practicing within the Pennsylvania Department of Corrections.

3. Any and all policies, directives, or instructions to the Defendant concerning Podiatry and Orthotics.

4. Any and all policies, directives, or instructions to the Defendant governing sick call procedures, both in general population and in the Restricted Housing Unit.

(Doc. 104, Ex. A.)

     Defendant objects to requests 2 and 3 on the basis that they are vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in this action.  With respect to request 3, and without waiving his objection, Defendant states that he practices medicine in accordance with his overall education training and experience, and is not currently aware of any information responsive to this request.

     Defendant objects to request 4 on the basis that it does not define by whom any such policies, directives or instructions are issued.  Further, and without waiving said objection, he further responds that he does not maintain custody or control over the information Plaintiff requests.

Once again, Plaintiff's requests are overbroad and ambiguous. While he requests all policies, directives or instructions concerning "the procedure" for Nurse Practitioners, he does not qualify what "procedure" he is referring to in his request. Moreover, it is clear that any such request is completely overreaching with respect to the limited issues remaining in this action against Defendant Iannuzzi. In addition, the remaining two requests, while more narrow, have been responded thereto by Defendant. He states that he is not aware of any policies, directives or instructions to him concerning Podiatry and Orthotics, and that with respect to any policies, directives or instructions governing sick call procedures in general population and the RHU, he does not maintain custody or control over any such information in that he is not an employee of the DOC. The court finds these responses to be sufficient.

In the final four requests, Plaintiff seeks the production of the following documents:

> 5. All sick call request sheets from 2009 to date of your response.
>
> 6. The Plaintiff's complete Medical Records from 2003 to the date of your response.
>
> 7. Any and all documents created by Mahanoy Staff Members, all Pennsylvania Department of Corrections Staff Member [sic] and all PHS and Wexford Staff members concerning Plaintiff's Medical Care and Treatment from 2003 to the date of your response to include, but not limited to the following . . . .
>
> 10. Any and all documents created by either Department of Corrections Staff Members, PHS or Wexford Health Service

8

>Staff members from 2003 to the date of your response that are not included in the items listed above, related to Plaintiff.

(Doc. 104, Ex. A.)

In response to requests 5 and 6, Defendant responds that he does not maintain custody or control over the information requested. He also responds that request 5 is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in this matter. Defendant's objections are well-taken. He has informed Plaintiff that the DOC maintains custody and control of his medical records at the facility where he is incarcerated, and that he is free to view and copy (at his own expense) his medical records.

In his reply brief, Plaintiff admits that he has been provided access to his medical records, and has reviewed them. Although he complains that he is without funds to make photocopies of the records, he is not entitled to free copies of his records. The United States Supreme Court has noted that the "expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress." United States v. McCollom, 436 U.S. 317, 321 (1976). The in forma pauperis statute, 28 U.S.C. § 1915, provides that a federal court may authorize the commencement and prosecution of a lawsuit "without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). While the statute does not define what constitutes

9

"fees" within the meaning of its provisions, in <u>Tabron v. Grace</u>, 6 F.3d d147 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit held that "[t]here is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a suit brought by an indigent litigant." <u>Id</u>. at 159 (emphasis added); citing <u>In re Richard</u>, 914 F.2d 1526, 1527 (6h Cir. 1990)(Section 1915 "does not give the litigant a right to have documents copied and returned to him at government expense.").

Although Plaintiff is proceeding <u>in forma pauperis</u>, there is no statutory authority permitting the court to direct that his discovery expenses be paid on his behalf. See <u>Artis v. Byunghak Jin</u>, No. 13-1226, 2013 WL 5936434, *2 (W.D. Pa. Nov. 5, 2013). Even if the court's equitable powers permitted some form of relief, Plaintiff has made no showing that he is unable to obtain copies of his medical records beyond his bare assertion that he cannot afford to pay the required fee.

Plaintiff also raises these challenges with respect to documents sought in request 7. Again, Defendant refers Plaintiff to his medical records which he can view and/or copy at his own expense, and reiterates to Plaintiff that he does not maintain custody or control over the medical records.[5]

---

[5] Plaintiff disputes that Defendant does not maintain custody and control over his medical records by arguing that he actually attached a copy of Plaintiff's Progress Notes to his brief in opposition to Plaintiff's motion for temporary restraining order. (Doc. 108 at 2.) While this may be true, it does not necessarily mean that Defendant

In opposing Plaintiff's motion to compel, Defendant argues that the request is completely overbroad in nature with respect to the period of time encompassed by the documents sought. More importantly, he again emphasizes that he does not maintain medical records for Plaintiff outside of the official DOC medical chart and that Plaintiff must obtain any such records through the DOC. The court agrees with this objection, and will not direct any further response to the request.

Finally, Defendant objects to request 10 on the basis that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and because he does not maintain custody or control over the information as requested. For all of the same reasons set forth above, the court agrees that Plaintiff's request for 11 years of all documents created by any and all DOC, PHS or Wexford staff member concerning Plaintiff's treatment is improper. Not only is the request patently overbroad and cumbersome, but Defendant has already responded that he does not maintain medical records separate from those maintained by the DOC. For these reasons, the motion to compel will be denied.

B.  Motion for leave to continue discovery

Also pending is Plaintiff's motion for leave to continue discovery wherein he seeks an order compelling counsel for Defendant to provide him with copies of all subpoenaed records and a copy of his deposition transcript. He relies on his <u>in forma</u>

---

has custody and control of Plaintiff's medical file, nor does it relieve Plaintiff of the obligation of conducting his own discovery.

11

pauperis status as support for granting his motion.  Without unnecessary elaboration, for the reasons previously set forth, this motion will be denied.  See Tabron, 6 F.3d at 159 (court had no authority to pay for Plaintiff's deposition transcript); Victor v. Lawler, 2010 WL 2326248, *3-4 (M.D. Pa. June 2, 2010)(the law is well-settled that pro se litigants must pay for the expenses involved in their civil actions).  An appropriate order follows.