UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KELVIN SUTTON,                              :
                                            :
       Plaintiff                            :
                                            :
   v.                                       : CIVIL NO. 3:CV-10-1899
                                            :
MARVA CERULLO, et al.,                      :    (Judge Kosik)
                                            :
       Defendants                           :

**MEMORANDUM**

Plaintiff, Kelvin Sutton, filed this action alleging claims of the denial of adequate medical care for a foot condition called "plantar fasciitis" in violation of 42 U.S.C. § 1983 and state professional malpractice law.[1]  Named as Defendants were several employees at the State Correctional Institution at Mahanoy (SCI-Mahanoy), Pennsylvania, Plaintiff's place of confinement when the incidents occurred, as well as medical professionals associated at the relevant time with Prison Health Services, Inc. ("PHS"), a contract provider of healthcare services to correctional facilities including SCI-Mahanoy.  Following the resolution of motions to dismiss, the only remaining

---

[1] Although Plaintiff refers to several exhibits in his complaint, none are attached to the complaint.

Defendant is Nelson Iannuzzi, CRNP.[2] Presently pending before the court is Iannuzzi's motion for summary judgment (Doc. 124). For the reasons that follow, the motion will be granted.

## I. Background

On September 24, 2013, the court issued a Memorandum and Order granting in part and denying in part a motion to dismiss filed by Defendant Iannuzzi.[3] All claims set forth against Iannuzzi occurring prior to September 10, 2008, were found to be barred by the statute of limitations. The motion to dismiss was denied in all other respects. As such, moving forward are the claims of August 26 and 28, 2009, when Plaintiff claims Iannuzzi was deliberately indifferent and negligent to his plantar fasciitis condition[4]. According to Plaintiff, he attended a medical appointment at SCI-Mahanoy on August 26, 2009, to exchange and receive new arch support insoles. While there, Iannuzzi entered the room, questioned Plaintiff as to who authorized the order for the new insoles, and told Plaintiff that he did not believe his insoles were

---

[2] Throughout these proceedings, Defendant's name has been spelled by the parties as "Ianuzzi," "Iannuzzi" and "Iannuzi." For the sake of consistency, the court will spell the name as "Iannuzzi" since this is the spelling used by Defendant when signing his name in Plaintiff's medical records and in filing his summary judgment motion. (Docs. 72-1, 124.)

[3] At this time, all claims set forth against Defendant Lisiak were also dismissed from this action.

[4] Plantar fasciitis is the irritation and/or swelling of the thick tissues on the bottom of the feet.

worn out.  Iannuzzi informed Plaintiff that he would have to wear the old insoles until Iannuzzi authorized new ones.  The second claim arose on August 28, 2009, when Iannuzzi is alleged to have had a nurse confiscate and destroy the prescribed insoles. Plaintiff alleges he was informed by the nurse that Iannuzzi had discontinued the use of insoles.

## II.     Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this evaluation, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law."  MacFarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

When deciding the existence of a genuine dispute of material fact, the court will award all reasonable inferences to the non-moving party.  Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.

Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011)(citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor.  Liberty Lobby, 477 U.S. at 256-57, 106 S. Ct. at 2514.  It is well-settled that: "[o]ne cannot create an issue of fact merely by ... denying averments ... without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, allegations made without evidentiary support may be disregarded. Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000).

**III.   Statement of Undisputed Facts**

In accordance with Pennsylvania Middle District Local Rule 56. 1, Defendant filed a statement of undisputed material facts.  (Doc. 126.)  Although Plaintiff did not

4

admit or deny these facts paragraph by paragraph as required by Rule 56.1, he did attach to his brief in opposition to Defendant's motion a document entitled "Plaintiff's Response In Opposition To Defendant's Motion For Summary Judgement" (Doc. 131 at 7), wherein he appears to respond to Defendant's stated facts, as well as set forth additional facts.  As such, the court will utilize this statement provided by Plaintiff to the extent it is supported by the record.

In support of his statement of undisputed facts, Defendant submits his declaration (Doc. 126-3), as well as the declarations of Gaye C. Gustitus, D.O. (Doc. 126-4), Amy Downer, Phlebotomist (Doc. 126-5), and K. Paul Flanigan, DPM, podiatry expert.  (Doc. 126-6.)  These submissions have attached exhibits, including Plaintiff's medical records. Defendant also submits excerpts of Plaintiff's deposition, as well as the Certificate of Merit Plaintiff filed of record.  (Doc. 126, Exhs. G-P.) Although Plaintiff does not submit any documents, he appears to rely on those submitted by Defendant.

The following facts are undisputed according to the submitted record.  The only remaining Defendant in this action is Iannuzzi.  Iannuzzi is a Certified Registered Nurse Practitioner ("CRNP").  (Doc. 126-3, Iannuzzi Decl. ¶ 1.)  Two Eighth Amendment claims and two state malpractice claims remain against Iannuzzi stemming from incidents occurring on August 26, 2009 and August 28, 2009.  In his Certificate of Merit, Plaintiff states that expert testimony is not necessary to support

5

his negligence claims. (Docs. 27; 126-16, Ex. P, Pl.'s COM.)

On August 12, 2009, Plaintiff saw Dr. Gaye Gustitus in the SCI-Mahanoy medical department and requested a renewal order for his arch support insoles. (Doc. 126-4, ¶8.) Gustitus is a family medicine physician who was providing "floating" coverage on this date. (Id. at ¶4.) On this occasion, Gustitus noted that upon examination, Plaintiff's feet revealed only flat footedness, and were otherwise normal. They were inconsistent with the existence of plantar fasciitis. The x-ray report was reviewed and merely indicated mild degenerative joint disease and a historical fracture. (Id. ¶¶10-12.)

On August 26, 2009, Plaintiff went to the medical department to obtain replacement insoles pursuant to the renewal order he obtained from Dr. Gustitus on August 12, 2009. (Doc. 126-3, ¶¶ 5-6.) Iannuzzi concluded that replacement insoles were not yet necessary, and that Plaintiff's insoles were only 4 months old, and not worn out. (Id., ¶¶7, 8.) Plaintiff usually received new insoles after 6 months. Iannuzzi wrote a progress note to this effect in Plaintiff's medical record. (Doc. 126-3 at 13.) This is verified by Amy Downer, a Phlebotomist who was present on this occasion. (Doc. 126-5, ¶¶ 9-11.) Downer verifies Iannuzzi's statement that Plaintiff became hostile when he was not provided with replacement insoles. (Doc. 126-5 ¶11; Doc. 126-3 ¶11.) Plaintiff agrees that he was provided with new insoles approximately 4 months ago (April 3, 2009), but states that said insoles were worn

6

out.  (Doc. 126-7 at 3-5, Doc. 126-8 at 2-3,Pl.'s Dep.)  Plaintiff admits that the arch support insoles were not therapeutic for his foot complaints, and that despite wearing the insoles, he was still experiencing pain. (Doc. 126-6 at 51.) Because of Iannuzzi, Plaintiff did not receive replacement insoles on August 26, 2009.

On August 28, 2009, Defendant Iannuzzi discontinued Plaintiff's insoles as recently renewed by Dr. Gustitus.  (Doc. 126-3 ¶16; p. 13.)  After examining Plaintiff's insoles, he found that the existing insoles had no signs of delamination or tears, retained their thickness, and were in good condition.  (Id. ¶8.)  After reviewing Plaintiff's medical records, Defendant determined that insoles were not therapeutic and provided no arch support.  He also determined that there existed no objective evidence of any serious chronic foot condition. This was documented in a progress note on said date. (Doc. 126-3 ¶¶ at 13.)  Plaintiff believes the discontinuation was done in violation of the Eighth Amendment because Iannuzzi is a CRNP, and he terminated an order renewed by a doctor.  As a CRNP, Iannuzzi is an independent medical practitioner and has the authority to exercise his own medical judgment and issue orders for medical devices, including those for podiatric conditions.  (Id. ¶20.) Iannuzzi can modify and change the orders of other providers.  (Id.)  Both Dr. Gustitus and Defendant state that by routine practice, they would have discussed the situation prior to Defendant discontinuing the renewal order, but neither has any specific recollection of these details.  (Id. ¶19; Doc. 126-4 at ¶26, Gustitus Decl.)  Gustitus has

7

offered an unsworn declaration stating that Iannuzzi had the authority to discontinue the arch insoles, and that he agreed with what Iannuzzi did. (Gustitus Decl. ¶25.) Plaintiff offers nothing to contradict or dispute any of the foregoing.  Moreover, Plaintiff admits that arch support insoles had not been therapeutic over the years, and told Dr. Gustitus on August 12, 2009, that he was still experiencing pain despite the use of insoles.  (Pl.'s Dep., Doc. 126-10 at 2-3, Doc. 126-4 at 8, Doc. 126-9 at 3.)  It is also undisputed that an inmate cannot keep discontinued medical devices/items in his possession.  (Docs. 126-3 ¶22; 126-4 ¶27; Doc. 126-11.)

Although Plaintiff alleges that Defendant was "verbally abusive" when he would not give Plaintiff replacement insoles (Doc. 126-7 at 5), Defendant has submitted his own declaration, as well as the declaration of Amy Downer, stating that Defendant was respectful to Plaintiff during the August 26, 2009 incident, and that it was Plaintiff that was hostile and inappropriate.  (Docs. 126-3 at ¶11; 126-5 ¶¶ 11, 12.)  While Plaintiff disputes this in his deposition, it is verified by a progress note written by Defendant on August 26, 2009 (Doc. 126-5 ¶13, Ex. 1), and the declarations of Iannuzzi and Downer.  It is also undisputed that at the time Plaintiff was wearing the insoles, he had other therapeutic devices in place to relieve the alleged pain in his feet, including moldable orthotics (non-custom), and the other devices were counterproductive to Plaintiff's alleged foot condition. Plaintiff did not show any other devices to Dr. Gustitus when he saw him on August 12, 2009.  (Docs.

126-3 ¶9; 126-4 ¶¶ 15-17.)

In his deposition, Plaintiff states that he was diagnosed with the condition of plantar fasciitis when he was in prison, but offers nothing to support this diagnosis. (Doc. 126-6 at 46, Pl.'s Dep.)  A declaration is made by K. Paul Flanigan, DPM, a practicing podiatrist since 2000, who reviewed all of the records in this case.  Flanigan found that although Plaintiff was diagnosed with pes planus (flat feet) in 2003, he had no signs of plantar fasciitis.  (Doc. 126-6 ¶¶1, 5-6.)  While there is an entry on May 3, 2006 from Dr. Neill referencing plantar fasciitis (Doc. 126-6 at 26), there is no support in the record that Plaintiff was suffering from plantar fasciitis at the relevant time.

On January 22, 2010, Plaintiff was provided with custom orthotics, and felt immediate relief of his pain.  (Doc. 126-3 ¶¶25-27; Doc. 126-12 at 2; Doc. 126-13 at 2.)  Plaintiff walked approximately ten (10) miles per week for exercise in 2009, and continued to walk the same distance and jog in 2014.  He concedes that Iannuzzi's conduct did not cause him any ongoing injury or damage.  (Doc. 126-15 at 4.)

IV. **Discussion**

To sustain his claims under the Eighth Amendment, Plaintiff must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks and citations omitted).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer –the prison

9

official–defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers Capitol v. Whetzel, 256 3d 120, 125 (3d Cir. 2001).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.

10

Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See, e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care than an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006), particularly where it can be shown that significant medical services were provided, but the prisoner is dissatisfied with the outcome of these services. Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since determinations remain a question of sound professional judgment. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). In addition, merely because medical professionals do not agree on an inmate's treatment, this conduct does not rise to the level of an Eighth Amendment violation.

11

See Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996), cert. denied, 519 U.S. 1126 (1997).

### A.     August 26, 2009 Incident

Based on the undisputed facts, Defendant Iannuzzi was not deliberately indifferent when he did not give Plaintiff replacement insoles on August 26, 2009. Even assuming the record was undisputed that Plaintiff was suffering from a serious medical need, the record is also undisputed that the insoles were only 4 months old, and that Plaintiff received new insoles approximately every 6 months.   While Plaintiff believed he was in need of new insoles at the time, the record is undisputed that Defendant examined Plaintiff's insoles and found them to be in good condition and not ready to be replaced.  As previously set forth, disagreement as to the condition of the insoles between Plaintiff and the Defendant is not a basis for Eighth Amendment liability.  There is simply no evidence in the record that Iannuzzi acted with deliberate indifference when he did not give Plaintiff the replacement insoles on August 26, 2009.  As such, Defendant is entitled to summary judgment on this Eighth Amendment claim.

### B.     August 28, 2009 Incident

Plaintiff also claims that Defendant Iannuzzi violated his Eighth Amendment rights on August 28, 2009, when Iannuzzi discontinued the insoles order.  According

to Plaintiff's allegations, Dr. Gustitus renewed the insoles order on August 12,, 2009, but Iannuzzi, a CRNP, discontinued the order on August 28, 2009.  While it is true that Defendant is a CRNP and discontinued the insoles order renewed by Dr. Gustitus, the undisputed record also demonstrates that Iannuzzi was the medical personnel that routinely addressed Plaintiff's medical needs and that Gustitus was only serving as a "floater" on the relevant date.  Undisputed declarations were submitted establishing that Gustitus had no idea what Plaintiff's insole history was, that he was issued new insoles four (4) months ago, that he usually received new insoles every six (6) months and that he was using other devices at the same time as the insoles.  Moreover, both Defendant and Dr. Gustitus submitted declarations stating that routinely they would discuss such a discontinuance by Iannuzzi, even though both were unable to recall the details of such conversation.  In addition, although Plaintiff asserts that Iannuzzi was without authority to discontinue the order, Dr. Gustitus herself submits a declaration establishing that Iannuzzi possessed such authority as a CRNP.

More importantly, even if an issue of fact exists as to whether Defendant possessed the authority to terminate the insole renewal order, the record demonstrates that Iannuzzi did not intentionally refuse to provide Plaintiff treatment or delay necessary treatment, therefore he was not deliberately indifferent.  Iannuzzi reviewed the record, found the insoles to be medically unnecessary, and chose to await the results of the orthotics consultation.  He did not prevent Plaintiff from receiving

13

necessary treatment, and he did not persist in a course of treatment which resulted in pain and permanent injury to Plaintiff.  See generally Rouse, 182 F.d 192 (3d Cir. 1999).  The record is undisputed that Iannuzzi did not discontinue the insoles without first examining Plaintiff's medical record, and determining that the renewed insoles were not medically necessary.  Plaintiff does not come forth with any evidence to contradict any of the foregoing.  The record is clear that Defendant did not intentionally interfere with a prescribed medical treatment for the purpose of causing harm.  See Estelle, 429 U.S. 97 (1976).  At best, Plaintiff alleges negligence which is not actionable under the Eighth Amendment. Although Plaintiff may have wanted to keep the insoles, this clearly is not a basis to find an Eighth Amendment violation on Defendant's part.  See Brown v. Deparlos, 492 F. App'x 211, 2012 WL 2512014 (2012); Mattise v. Pa. Dep't of Corrections, 2014 WL 2156746 (May 20, 2014)(Disagreement is not enough to establish an Eighth Amendment violation).  Rather, deference is owed to Iannuzzi who was treating Plaintiff at SCI-Mahanoy.  Summary judgment on this Eighth Amendment claim is also warranted in favor of Defendant Iannuzzi.

    **C.**    **Negligence Claims**

The court further finds that Defendant is entitled to summary judgment with respect to any negligence claim brought by Plaintiff.  It is undisputed that Plaintiff filed a Certificate of Merit stating that expert testimony was not necessary in this case.

14

As such, he is now precluded from doing so. See Pa.R.C.P. 1042.3(a). It is well established that in order to prove a prima facie cause of action for medical professional liability, a plaintiff must establish the following: (1) a duty owed by the physician to the patient; (2) breach of that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm. Thomas v. United States, 558 F.Supp.2d 553 (M.D. Pa. 2008); Mitzfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990).

There is a very narrow exception to the expert testimony requirement for medical malpractice under Pennsylvania law which applies when the matter is so simple or the lack of skill so obvious as to be within the range of experience and comprehension of even non-professional persons. See Brown v. Hahnemann University Hosp., 20 F.Supp.3d 538 (2014). The general rule in Pennsylvania is that expert testimony is required in order for a plaintiff to establish the elements of a prima facie case of medical negligence. Thus, in almost all cases, a plaintiff must produce expert testimony to aid the jury in reaching a conclusion as to the cause of the inmate's pain/injury. See McCool v. Dep't of Corrections, 984 A.2d 565 (Pa. Commw. 2009). Expert testimony is not required to be presented where the cause of the pain is obvious to a layperson.

In the instant case, Plaintiff has filed a Certificate of Merit on the record stating

15

that he is not required to produce an expert in this case.  However, Plaintiff is mistaken, and Defendant is entitled to summary judgment on any negligence claim brought by Plaintiff due to his failure to submit expert testimony.  Plaintiff is required to present medical expert testimony to establish that his care and treatment by Defendant Iannuzzi fell short of the required standard of care and that the alleged breach by Iannuzzi proximately caused his injury.  See Toogood v. Owen J. Rogal, D.D.S., P.C., 573 Pa. 245, 824 A.2d 1140 (Pa. 2003).  The "foot pain" and foot condition of Plaintiff is not within the ordinary knowledge of the jury, and Plaintiff must produce a medical expert to determine any causation on the part of Iannuzzi.  Plaintiff has failed to do so.

Further, in moving for summary judgment, Iannuzzi has presented the declaration of Dr. K. Paul Flanigan, DPM.(Doc. 126-6.)  Dr. Flanigan is a podiatrist and has been in practice since 2000.  Flanigan's curriculum vitae is attached to his statement and has not been challenged by Plaintiff. (Id. at 14.)  Flanigan reviewed the records in this case and testified that objective signs of plantar fasciitis were absent, and that pes planus was present in the left foot.  Flanigan also stated that Iannuzzi properly concluded that new insoles were not indicated on August 26, 2009.  (Id. ¶25.)  In reviewing the records, Flanigan found that Iannuzzi documented in detail why new insoles were not yet needed by Plaintiff on said date, and that the record supported the behavior of the parties as described by Defendant, not Plaintiff, and as supported by a

witness statement.  (Id. ¶26.)

Defendant also offered the statement of Dr. Flanigan with respect to the August 28, 2009 incident.  Again, no countervailing statement by an expert has been offered by Plaintiff with respect to the foot condition from which he states he suffered and with respect to the actions of Defendant Iannuzzi in response to his condition.  Flanigan stated that Iannuzzi discontinued the renewed insole order after further review of Plaintiff's medical records, and the determination that insoles were not even medically necessary.  (Id. ¶27.)  Even Plaintiff had agreed that the insoles were not therapeutic.  Flanigan found that Iannuzzi accordingly discontinued the insoles and awaited a report from the custom orthotics consultation.  (Id. ¶¶28, 29.)  The record verifies that when Plaintiff was fitted with the custom orthotics, he was satisfied.  (Id. ¶33.)  Based on the foregoing, summary judgment will be granted to Defendant with respect to any state negligence claim he seeks to bring in this action.  An appropriate order follows.